UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ENFINITY CENTRAL VAL 2 PARLIER LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PARLIER,<br><br>    Defendant. | No. 2:19-cv-01607-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |
|---|---|

In instituting the present lawsuit, Plaintiff Enfinity Central Val Parlier LLC ("Plaintiff") seeks damages stemming from the alleged failure of Defendant City of Parlier ("Parlier" or "City") to make payments for electricity generated by a solar power system installed by Enfinity for Parlier.  Parlier now moves to dismiss Plaintiff's complaint on grounds it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  As set forth below, that Motion (ECF No. 10) is DENIED.

///

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

# BACKGROUND[2]

According to Plaintiff's Complaint, its predecessor-in-interest, Enfinity America Corporation ("Enfinity Corp.") entered into a Solar Energy Services Agreement and Easement ("Agreement") with Parlier dated October 6, 2010. Under the terms of that Agreement, in exchange for installation of an electricity grid-connected photovoltaic solar power plant with a specified total generating capacity ("facility"), Parlier agreed to buy the total energy output of said facility.

In 2011, Enfinity Corp assigned its interest in the Agreement to Plaintiff, and Plaintiff thereby became a succesor-in-interest under that contract. On or around July 28, 2011, the City was informed of that transfer and affirmatively consented to it. See Pl.'s Compl., ¶ 6, Ex. H, pp. 8-9. Prior to 2017, all interest in Plaintiff had been held by a holding company, Enfinity SPV Holdings, LLC. On April 22, 2017, however, the holding company was sold to Silicon Ranch. Thereafter, on or about October 26, 2017, Silicon Ranch notified the City of the transfer of the holding company's assets, which included Plaintiff. Following the transfer, it appears that all billing statements and correspondence directed to the City were sent in Plaintiff's name under Silicon Ranch's letterhead.

Parlier apparently continued to pay Plaintiff's energy statements through October of 2018, but since that time has failed to do so, allegedly on grounds that the facility is not producing the electrical output it claims. According to Plaintiff, the City's refusal to pay for energy charges generated by the facility, when due, constituted an Event of Default as defined by the terms of the Agreement. Pl.'s Compl., ¶ 18, Ex. A, § 12.1. After an Event of Default, according to the Complaint, the Agreement requires that the non-defaulting party provide written notice to the defaulting party and a reasonable opportunity to cure. Id. at ¶ 18, Ex. A, § 12.2. Accordingly, on May 22, 2019, Plaintiff sent a Notice of Late Payments to the City at the address provided for in the Agreement,

---

[2] This section is drawn, sometimes verbatim, from the allegations contained in Plaintiff's Complaint (ECF No. 1), unless otherwise specified.

thereby satisfying the notice provisions contained in the Agreement at § 12.2 under "Opportunities to Cure Default." As the Agreement specified, Plaintiff's May 22, 2019, correspondence, entitled "Notice of Late Payments," was directed to Lou Martinez as the City of Parlier's Manager, and its then attorneys, the law firm of Lozano Smith. See Compl., Ex. B. The correspondence identified unpaid invoices for power generated by the facility totaling $63,300.20 and attached were the invoices which contained both itemized service charges by period and the number of kilowatt hours generated by the facility.

On May 30, 2019, the City's present attorney (and counsel of record in this proceeding), Neal Costanzo, wrote back to Plaintiff, complaining that it had failed to respond to inquiries about the actual power being generated other than through "trite emails." Costanzo opined that the facility was not producing power, as evidenced by the fact that the City was paying too much to PG&E to run the wastewater treatment plant for which the facility was supposed to provide electricity. Costanzo accused Plaintiff of generating false invoices that called for treble damages under California's False Claims Act. Pl.'s Compl., Ex. C. In its June 4, 2019 response, Plaintiff pointed to § 7.6 of the Agreement which requires a qualified third party to validate the amount of energy being metered by the facility and requested that such testing be scheduled as soon as possible. Id. at Ex. D.

Attorney Costanzo thereafter accused Plaintiff of not being the "Service Provider" under the Agreement because its "controlling company" (the holding company) had filed for bankruptcy and had thereafter been sold to Silicon Ranch. Costanzo called Silicon Ranch "a stranger to the contract" to which the City had not consented, arguing that "we have nothing to show your company owns the solar facility." Costanzo again threatened False Claims Act liability, and in contravention to the terms of the Agreement stated that "we will not allow access to the site by anyone other than the contractor that we select." Id. at Ex. E.

///

3

By its July 1, 2019, response, Plaintiff again advised the City, through its Mayor, three other City officials, and Mr. Costanzo as the City's attorney[3] that its failure to make payments constituted an Event of Default under the Agreement and gave the City five business days, as provided in § 12.2, to cure. Id. at Ex. F. This prompted a July 5, 2019 response from Mr. Costanzo indicating that Plaintiff "seem[ed] confused" since it was not even a party to the Agreement as the City had not consented to the transfer of Plaintiff's holding company to Silicon Ranch. Id. at Ex. G. As such, according to Costanzo, Silicon Ranch had "no ability" to issue any notice of default as a "stranger to our contract." Id. Costanzo also claimed that Plaintiff failed to provide any documents reflecting any repair or maintenance to the facility, even though Plaintiff claimed otherwise. In addition, Costanzo reiterated his mantra that Plaintiff was "attempting to defraud the City" and inexplicably accused Silicon Ranch's counsel of unprofessional conduct for contacting the City concerning its alleged breach of the Agreement, even going so far as to threaten to file a complaint with the California State Bar. Id.

The resulting impasse prompted Plaintiff to file the present lawsuit on August 19, 2019. Causes of action asserted include breach of the Agreement, breach of the access easement contemplated by the Agreement for permitting Plaintiff to service the facility (the City refused to permit any inspection and accused Plaintiff's agents of trespass when they attempted to do so), breach of the implied covenant of good faith and fair dealing, a common count for unjust enrichment, and a request for declaratory relief to adjudicate the parties' respective rights and duties under the Agreement.

In moving to dismiss, the City alleges that Plaintiff failed to comply with the provisions of the California Government Claims Act by not timely presenting a claim to Parlier as a governmental entity, and by not permitting Parlier to reject that claim before filing suit. The City further claims that Silicon Ranch cannot enforce any rights under the Agreement on Plaintiff's behalf because it failed to succeed to Plaintiff's rights. In

---

[3] Mr. Costanzo had previously advised Plaintiff that the City Manager to whom notice under the Agreement was supposed to be provided, as well as City's prior counsel, Lozano Smith, were no longer affiliated with the City. See Pl.'s Compl., Ex. C.

addition, Parlier alleges that claims for breach of the covenant of good faith and fair dealing and for unjust enrichment by way of a common count cannot be asserted against a municipal entity like the City.  Finally, Parlier contends that Plaintiff's declaratory relief claim is duplicative and superfluous of the breach of contract cause of action already alleged.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

   A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///
///
///
///

# ANALYSIS

### A. Claim Presentation Requirements

The City first alleges that Plaintiff cannot maintain any claim against it because the Complaint contains no allegation as to the service of a claim for damages on the City, and the City's rejection of such claim, prior to institution of this lawsuit is required by the California Government Claims Act  Cal. Gov't Code §§ 905 et seq. ("GCA"). Defendant cites cases holding that a plaintiff must allege facts demonstrating either compliance with the GCA's requirements, or an excuse for non-compliance, as a prerequisite for filing suit.  See State of California v. Superior Court, 32 Cal. 4th 1234, 1243-44 (2004).

In opposition, Plaintiff maintains that its correspondence and itemized demands for payment, with documentation attached, amounted to compliance because that information included the same description of indebtedness, along with the circumstances of the alleged claim, that GCA requires.  As Plaintiff points out, "[t]he purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and settle them, if appropriate, without the expense of litigation.'" Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 445 (2004) (quoting City of San Jose v. Sup. Ct., 12 Cal. 3d 447, 455 (1974)).  "[A] claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'"  Id. (quoting Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1426 (1992)).

Plaintiff asserts that its Complaint, along with the exhibits attached, sufficiently demonstrate compliance with the stated objectives of the GCA.  Moreover, even if some technical aspect of the claim presentation requirements was not satisfied, Plaintiff maintains that under the doctrine of "substantial compliance" its lawsuit should still be permitted to proceed.  See Gen. Sec. Servs. Corp. v. County of Fresno, 815 F. Supp. 2d 1123, 1133 (E.D. Cal. 2011).  Plaintiff claims that not only was the City's attorney well

aware of the basis for its claims as enumerated above, but the correspondence as referred to in the Complaint and its exhibits makes it absolutely clear that the City rejected Plaintiff's claims before this suit was filed.

Relying on the California Supreme Court's decision in <u>DiCampli-Mintz v. County of Santa Clara</u>, 55 Cal. 4th 983 (2012), the City argues that substantial compliance no longer suffices and that the requirements of the GCA must be literally satisfied, including presentation to "the clerk, secretary, auditor or to the governing body [of the public entity] at its principal office" pursuant to Government Code § 915(a).  The City contends that because there is no allegation that any such delivery occurred, the GCA's requirements cannot have been satisfied since communication with the City's attorney cannot suffice under the statute.  Def.'s Reply, ECF No. 18, 3:26-4.  According to the City, <u>DiCamplit-Mintz</u> stands for the principle that the purpose of the GCA is not to prevent surprise, but rather to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." 55 Cal. 4th at 991.  The City further points to language in the decision finding that the GCA's intent is "not to expand the rights of Plaintiffs against government entities, [but instead] to confine potential governmental liability to rigidly delineated circumstances." <u>Id.</u>

Under the circumstances of the present matter, the City's claims here border on the frivolous.  First, there can be no real question that the correspondence between the City and Plaintiff adequately put the City on notice of the nature of Plaintiff's claim before this lawsuit was filed.  At the very least, there was substantial compliance.  In addition, <u>DiCampli-Mintz</u> is completely inapposite here.  The plaintiff in that case sought tort damages for medical malpractice, a scenario far less clear cut than this case which seeks liquidated damages pursuant to a written Agreement spelling out both the obligations of the parties and just what events constitute breach.  In addition, arguing, as the City's counsel does here, that Plaintiff should have sent a claim to its "clerk, secretary, auditor or governing entity" belies credulity.  The Agreement between the

parties, at § 9.1, contained specific provisions as to who was to be notified in the event of breach and at what address (see Compl., Ex. A, p. 17), and Plaintiff's correspondence complied with those agreed-upon directives. The contract here, as evidenced by the parties' Agreement, was unquestionably entered into by the City, and its specific provisions concerning notice in the event of breach, which have clearly been satisfied, trump any general requirements evinced by the GCA.

### B.     Plaintiff's Rights Under the Agreement

The City's argument that Plaintiff, through Silicon Ranch, cannot enforce the Agreement is equally far-fetched. According to the City, any sale of Plaintiff was only effective, absent the City's prior written consent, if Parlier was notified, prior to the transfer, of written evidence of credit-worthiness and proof that it was experienced in the electricity industry beforehand. The Agreement, however, provides as follows:

> **16.1  General Prohibition on Assignments.**
>
> Except as provided in Section 16.1 and 16.2 below, neither Service Provider [Plaintiff] nor Customer [City] may voluntarily assign its rights nor delegate its duties under this Agreement, or any part of such rights or duties, without the written consent of the other Party. . . . Any such assignment or delegation made without such written consent or in violation of the conditions to assignment set out below shall be null and void.
>
> **16.2 Service Provider Sale or Transfer Without Prior Consent.**
>
> Any direct or indirect change of control of Service Provider (whether voluntary or by operation of law) shall be deemed an assignment not requiring the prior written consent of Customer. In addition, Service Provider may sell, assign, pledge, delegate or otherwise transfer its rights, duties and obligations under this Agreement without Customer's prior written consent provided Service Provider provides to Customer written evidence of such purchaser's, assignee's, delegatee's or other transferee's credit worthiness and proven experience in the solar electricity industry prior to such sale, assignment, delegation or other transfer.

Pl.'s Compl, Ex. A, p. 24.  ECF Nos. 1, 24.

While Silicon Ranch notified the City of its purchase of the holding company (Enfinity SPV Holdings, LLC) on April 27, 2017 (see Pl.'s Compl., ¶ 7), the City claims

that because there was no compliance with the provisions of § 16.2, that transfer was void and Silicon Ranch cannot assert any claim on Plaintiff's behalf. The City, however, fails to appreciate that it was not Plaintiff that was sold to Silicon Ranch, it was the holding company that owned all interests in Plaintiff. Plaintiff itself continued as a separate legal entity throughout and was never itself directly sold. Consequently, only the first portion of § 16.2 is applicable, which provides that "any direct or indirect <u>change of control</u> of Service Provider (whether voluntary or by operation of law) shall be deemed an assignment <u>not</u> requiring the prior written consent of [the City]." <u>Id.</u> The remaining provisions apply only if Plaintiff itself sold its interests in the Agreement, and that was not what happened here. What occurred was a change in Plaintiff's control, not a direct sale or transfer by Plaintiff itself. Tellingly, by admitting in its Motion that the issue revolves on "the <u>change in control</u> of [Plaintiff] being valid" (Def.'s Mot., 8:18-19), the City essentially concedes this point.

Finally, with regard to the City's argument that Plaintiff has no right to assert any right under the Agreement because it itself was in default by not having maintained the facility and/or not providing records demonstrating as much, those issues all revolve upon factual determinations going well beyond testing the pleadings at this early stage of the proceedings before any discovery has been conducted.

### C. Breach of the Covenant of Good Faith and Fair Dealing

"Every contract imposes on each party a duty of good faith and fair dealing in each performance." <u>Diaz v. Federal Express Corp</u>., 373 F. Supp. 2d 1034, 1066 (C.D. Cal. 2005). To plead breach of the implied covenant, "plaintiffs must plead facts showing bad faith and demonstrating 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act.'" <u>Longest v. Green Tree Servicing LLC</u>, 74 F. Supp. 3d 1289, 1300 (C.D. Cal. 2015) (quoting Env't Furniture, Inc. v. Bina, 2010 WL 5060381, at *3 (C.D. Cal. 2010)).

///

Here, the City argues that because Plaintiff's implied covenant claim "rests upon the same facts and seeks the same damages" as Plaintiff's breach of contract claims under the Agreement, no separate claim by way of an implied covenant can be made. The City thus takes the position that any such claim "is superfluous and duplicative of the contract claim." Def.'s Mot., 11:6-9, citing Bionghi v. Metro Water Dist. of Southern California, 70 Cal. App. 4th 1358, 1370 (1999); Careau & Company v. Sec. Pac. Bus. Credit Inc., 222 Cal. App. 3d 1371, 1395 (1990).

This argument is also misplaced. First, as Plaintiff points out, "whether or not a breach of the implied covenant is duplicative of a contract is more appropriately addressed at summary judgment as opposed to the more liberal pleading standard applicable to the present motion to dismiss." U.S. ex rel. Innovative Const. Solutions-Norcal v. CH2M Hill Constructors, Inc., No. 2:14-cv-01376 MCE, 2014 WL 6610999 at *5 (E.D. Cal. 2014). In addition, given the threats made by the City's counsel, Mr. Costanzo, and the City's failure to allow Plaintiff access to the facility for purposes of inspection and/or repair, despite the fact that the Agreement contained express provisions permitting such access (Pl.'s Compl, ¶¶ 22, 25, citing Agreement, Ex. A at § 3.1), the Court certainly cannot rule out extra-contractual liability and resulting damages beyond the scope of the Agreement itself. The City's Motion to Dismiss Count III, for breach of the implied covenant of fair dealing, accordingly fails.

### D.     Unjust Enrichment

In Count IV, Plaintiff claims unjust enrichment through a common count asserted against the City, alleging that because the City requested and received the energy it requested and did not pay for services generated by the facility, the City has been unjustly enriched and is entitled to the reasonable value of the energy. See Compl., ¶¶ 50-53. As such, it is different and distinct from the parties' Agreement, making the authority relied upon by the City distinguishable.[4] Moreover, given the difference

---

[4] The fact that there is an underlying contract between Plaintiff and the City makes a restitution claim against the City possible despite its status as a public entity. See Russell City Energy Co., LLC v. City of Hayward, 14 Cal. App. 5th 54, 73 (2017).

///

between liability for breach of contract and damages for unjust enrichment, the claims are not duplicative.

### E.   Declaratory Relief

The City contends that because Plaintiff asserts a fully matured breach of contract claim, it is limited to that remedy and cannot assert a separate declaratory relief claim, citing Canova v. Trustees of Imperial Irrigation District, 150 Cal. App. 4th 1487, 1497 (2007).  As Plaintiff argues, however, in this case the two claims seek different remedies.  While the breach of contract claims seek monetary relief in accordance with the Agreement, its declaratory relief cause of action, as set forth in Count V, addresses the City's claim that the Agreement is "of no force and effect" and has no continuing viability.  As Canova recognizes, declaratory relief "operates prospectively to declare future rights."  Id.  Given the parties' ongoing relationship, that requested relief is prospective in nature and not subsumed by, or duplicative of, the breach of contract claim.

### CONCLUSION

Based on the foregoing, Defendant City of Parlier's Motion to Dismiss (ECF No. 10) is DENIED.[5]

IT IS SO ORDERED.

Dated:  June 8, 2020

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court concluded that oral argument would not be of material assistance, it decides the matter on the briefing in accordance with Eastern District Local Rule 230(g).

12